## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**DONALD ULFERTS, individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**FRANKLIN RESOURCES, INC., FRANKLIN ADVISORS, INC., FRANKLIN/TEMPLETON DISTRIBUTORS, INC.,**

**Defendants.**

**MASTER FILE: 07-CV-1309 (WJM)**

**OPINION**

**HON. WILLIAM J. MARTINI**

Bruce Daniel Greenberg
Lite, DePalma, Greenberg & Rivas, LLC
Two Gateway Center
12th Floor
Newark, NJ 07102

(*Counsel for Plaintiff*)

Gregory Joseph Hindy
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

(*Counsel for Defendants*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff—a shareholder of several mutual funds—has sued Defendants—the

funds' manager and distributor and their parent corporation—for violations of section

10(b) of the Securities Exchange Act of 1934 and section 12(a)(2) of the Securities Act of 1933.  Plaintiff alleges that Defendants violated the Act by failing to disclose "shelf-space" arrangements with the funds' brokers.  Under these arrangements, Plaintiff alleges that Defendants provided brokers with financial incentives to sell their mutual funds.  Plaintiff further alleges that under these arrangements, he paid brokerage fees that he believed the funds used to purchase value-adding research and brokerage services but that in reality the funds used to finance these shelf-space arrangements.

Defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims.  They put forth several arguments to justify dismissal, including that Defendants had no obligation to disclose the shelf-space arrangements.  The Court agrees and holds that Plaintiff's complaint fails to state a cognizable claim for relief.  Accordingly, Defendants' motion is **GRANTED**, and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

## I.    FACTS AND PROCEEDINGS

This suit is one of a growing number of actions stemming from the mutual fund industry's use of "shelf-space" arrangements.  To understand the factual underpinnings of Plaintiff's claims, it is first necessary to understand the basic workings of mutual funds and shelf-space agreements.

### A.    Mutual Funds and Shelf Space Agreements

A mutual fund is a company created to allow individuals to invest in a range of

financial products.  See generally John P. Freeman, The Mutual Fund Distribution Expense Mess, 32 J. CORP. L. 739 (2006).  Its assets consist of one or more investment portfolios, which may include stocks, bonds, or other securities.  Ownership of a mutual fund is divided by shares, like a corporation, although its shareholders are more often referred to and thought of as investors.  Also like a corporation, a mutual fund has a board of directors, which is supposed to represent and protect the interests of its shareholders.

Unlike corporations, however, which are run by their employees under the supervision of the board of directors, mutual funds are run by outside organizations. These outside organizations, called investment advisors, conduct the mutual fund's operations, such as selection of its investments.  Usually, investment advisers are separate corporations, with their own shareholders and boards of directors.

This outsourcing of management creates a conflict of interest for the investment advisor.  On one hand, the investment advisor is beholden to its own shareholders.  On the other hand, the investment advisor is hired by the fund to serve the interests of its shareholders.

This conflict comes into focus upon consideration of the typical contract between a mutual fund and its investment adviser.  The contract, under which the investment adviser promises its services to the mutual fund, typically provides for a fee in return to the investment adviser that is calculated as a percentage of the fund's net assets.  Thus, investment advisers have an incentive to sell more shares of the fund, regardless of the

3

return on the investments for the fund's existing shareholders.

This conflict of interest has spawned a recent wave of controversy over the mutual fund industry. Investment advisers, eager to sell more shares of their mutual funds to investors, are alleged to have devised methods of incentivizing securities brokers to prefer selling certain funds over other funds. These methods are generally referred to as "shelf-space" arrangements, analogous to the financial incentives that producers of consumer goods provide to retailers to obtain premium shelf space for products.

There are many opaque financial arrangements between investment advisers and brokers that can function as shelf-space arrangements, two of which are relevant here. First, the investment adviser, who selects investments for the fund's portfolio, may channel the trading necessary to obtain these investments to certain brokers, a practice called "directed brokerage." These brokers will receive the brokerage fees associated with the trades. In turn, the brokers will push certain mutual funds on their clients. Under these directed brokerages, funds may be utilizing brokers to trade their securities who do not guarantee the best market rate.

Second, investment advisers may pay brokers both brokerage commissions and research fees in one lump sum, a practice referred to as a "soft-dollar" payment. Given that the value of such brokerage and research fees together may be difficult to objectively value, soft-dollar payments allow investment advisers to pay brokers inflated fees and commissions, with the understanding that the soft dollars are purchasing not only trading

4

and research, but also shelf space.

These shelf-space arrangements create at least one harm relevant here. As the funds' net assets grow, so do the fees that shareholders must pay investment advisers. Investment advisers can then pass some of these fees on to brokers, who will in turn continue to steer more investors toward purchasing the mutual funds. The mutual funds continue to increase in size, and the brokers and investment advisers will collect higher fees, but the shareholders will own shares in ever-larger, less-dynamic mutual funds laden with excessive fees.

This litigation revolves around allegations of such a scheme.

**B.      The Instant Litigation**

The Plaintiff in this litigation is Donald Ulferts.[1]  (Compl. ¶ 10.)  Ulferts purchased shares of certain mutual funds, called the Franklin Funds ("Funds").  (Compl. ¶ 1, Ex. A)  Ulferts alleges that he suffered financial losses in the purchase and ownership of these funds as a result of Defendants' shelf-space arrangements.  (Compl. ¶ 2.)

Ulferts has named three Defendants whom he alleges entered or are responsible for the shelf-space arrangements.  First, Ulferts names Franklin Advisers, Inc., an investment

---

[1]  Ulferts actually brings this suit as a class action. (Compl. ¶ 23.)  However, because this Opinion's disposition of Defendants' motion applies identically to all such plaintiffs and because the Court has not yet certified a class, the Opinion will not further discuss the class aspect of the complaint.  See Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969) ("[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim . . . .").

adviser responsible for implementing the investment policies and supervising the day-to-day management of the Franklin Funds.  (Compl. ¶ 12.)  Second, Ulferts names Franklin Templeton Distributors, Inc., the distributor of the Franklin Funds.  (Compl. ¶ 13.)  Third, Ulferts names Franklin Resources, Inc., the parent corporation of the other two Defendants.  (Compl. ¶ 11.)

Ulferts alleges that the Defendants engaged in shelf-space arrangements like the ones described above.  (Compl. ¶ 2)  Specifically, Ulferts alleges that Defendants used directed brokerages and soft-money arrangements to induce brokers to sell the Franklin Funds.  (Compl. ¶¶ 14–18.)  The crux of Ulferts's complaint is that Defendants failed to disclose these arrangements in any of the prospectuses or other statements that Defendants gave to Franklin Funds shareholders.  (Compl. ¶ 16.)  Accordingly, Ulferts alleges that he paid inflated fees directly to Franklin Advisers and Franklin Templeton Distributors.  (Compl. ¶ 5.)

Ulferts asserts two types of claims.  First, Ulferts asserts a claim under section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2), against Franklin Templeton Distributors.  (Compl. ¶ 28.)  Section 12(a)(2) imposes liability upon sellers of securities who issue prospectuses that omit certain material information.  Ulferts alleges that Franklin Templeton Distributors is liable under section 12(a)(2) for issuing prospectuses omitting any reference to the Franklin Funds' shelf-space arrangements.  (Compl. ¶¶ 27–33.)  Ulferts also asserts a related claim against Franklin Resources—Franklin

Templeton Distributors' parent corporation—under section 15 of the Securities Act, 15 U.S.C. § 77o, which imposes liability upon those who control defendants liable under section 12 of the Securities Act.  (Compl. ¶¶ 34–39.)

Second, Ulferts asserts claims against all Defendants under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission (SEC) Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  (Compl. ¶¶ 42–51.)  Rule 10b-5 prohibits the omission of certain material facts in connection with the sale of securities.  Ulferts alleges that all Defendants are liable under section 10(b) and Rule 10b-5 for failing to disclose the shelf-space arrangements to shareholders.[2] (Compl. ¶¶ 42–51.)  He further alleges that these omissions perpetrated a "fraud on the market," which caused the market to artificially inflate the Funds' price.  (Compl. ¶¶ 40–41.)

Defendants now move to dismiss Ulferts's complaint under Rule 12(b)(6) for failure to state a claim.  Defendants put forth several arguments in support of their motion, only two of which the Court will address in this Opinion.[3]  First, Defendants

---

[2]Ulferts also alleges that Franklin Resources is liable for the other two Defendants' section 10(b) violations under section 20(a) of the Exchange Act, 15 U.S.C. § 78t (Compl. ¶¶ 52–56), which imposes control person liability for primary violations of section 10(b).  Given that Defendants do not challenge whether Franklin Resources might be held liable more properly under section 10(b) directly or derivatively through section 20, this opinion will not further discuss the distinction.

[3]Both Ulferts and Defendants rely exclusively on briefs filed for a nearly identical motion to dismiss in a nearly identical case in this Court, involving the same Defendants but a different plaintiff.  See Alexander v. Franklin Res., Inc., No. 07-cv-848 (D.N.J.

argue that Ulferts has already participated in a similar action, which this Court dismissed, and that his claims are thus barred by res judicata and collateral estoppel. (Mem. of Law in Supp. of Mot. to Dismiss in Alexander v. Franklin Res., Inc., No. 07-cv-848 at 6.) Second, Defendants argue that Ulferts fails to state a claim based on Defendants' nondisclosure of the shelf-space arrangements because Defendants had no duty to disclose those arrangements. (Mot. 7.)

## II.   DISCUSSION

Rule 12(b)(6) requires a district court to dismiss a complaint if it fails to state a cognizable legal claim. Dismissal is appropriate if the facts as alleged in the complaint only speculatively entitle a plaintiff to relief. Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). "Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6)." Edgar v. Avaya, Inc., 503 F.3d 340, 349 (3d Cir. 2007). In making this determination, the Court will accept all factual allegations in the complaint as true. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007); Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007). The Court will also consider documents incorporated into the complaint by reference and matters of which the Court may take judicial notice. Tellabs, 127 S. Ct. at 2509; Winer, 503 F.3d at 327.

---

dismissed Nov. 27, 2007). As will be explained shortly, this Court dismissed that complaint with prejudice as barred by res judicata and thus had no opportunity to consider the bulk of the arguments set forth in the briefs.

A.      **Res Judicata and Collateral Estoppel**

Defendants argue that Ulferts's claims are barred by res judicata and collateral

estoppel.  (Mot. 6.)  Although they do not set forth any reasoning to support this

argument, Defendants' argument presumably refers to a nearly identical case in this

Court, which Plaintiff participated in and which this Court dismissed with prejudice.  The

Court disagrees and holds that Ulferts's claims are not precluded.  A brief explanation of

this litigation's history is necessary to understand and dispose of Defendants' argument.

In 2004, a plaintiff named Stephen Alexander filed a class action complaint in this

Court against an array of mutual funds and related parties, including the three Defendants

in this litigation.  See In re Franklin Mut. Funds Fee Litig. (*Franklin I*), 388 F. Supp. 2d

451 (D.N.J. 2005).  Alexander's claims were based on the same factual

underpinnings—the Franklin Funds shelf-space arrangements—that underlie Ulferts's

claims in this case.  See id. at 456–59.  In contrast to this case, however, Alexander

asserted claims under the Investment Company Act of 1940, the Investment Advisers Act

of 1940, and state law.  See id. at 459.  In March 2007, this Court dismissed Alexander's

suit on the pleadings with prejudice, before Alexander had a chance to move for class

certification.  In re Franklin Mut. Funds Fee Litig. (*Franklin II*), 478 F. Supp. 2d 677, 688

(D.N.J. 2007).  Ulferts does not appear to have been involved with that case.

Months before dismissal, however, Alexander and Ulferts each filed complaints in

the court of Judge Susan Illston of the United States District Court for the Northern

District of California, the latter of which is now the subject of the instant motion.  <u>See</u> <u>Alexander v. Franklin Res., Inc.</u>, Nos. 07-848, 07-1309, 2007 WL 2021787, at *1 (D.N.J. July 09, 2007).  These complaints were nearly identical to each other, alleging claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 based on the Franklin Funds' shelf-space arrangements, as explained above.  Because these complaints were similar to Alexander's first complaint, which was then still pending before this Court,  Judge Illston transferred them here.  <u>Id.</u> at *1–2.

      After this Court dismissed Alexander's first complaint, Ulferts moved to be named lead plaintiff in Alexander's second suit.  This Court never adjudicated that motion, however, since on November 27, 2007, the Court dismissed Alexander's second complaint as barred by res judicata.  The Court reasoned that Alexander could have and should have asserted his Security Act and Exchange Act claims in his original complaint.

      Defendants now apparently seek to preclude Ulferts from litigating those same claims.  As the opinion will now explain, however, preclusion does not apply to Ulferts's claims—even though it applied to Alexander's identical claims.

      Preclusion prevents parties from litigating claims that they either raised or could have raised in an earlier action.  <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 476 (1998). The basic rule of preclusion is that parties are bound and nonparties are not.  <u>Nat'l</u> <u>Wildlife Fed'n v Gorsuch</u>, 744 F.2d 963, 969 (3d Cir. 1984).

      However, there are a number of relationships between parties and nonparties that

will bind nonparties to the parties' judgments.  See Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3d Cir. 1994).[4]  Of particular relevance here, extensive participation or control of a suit by a nonparty may bar that party from relitigating issues or claims settled in that suit.  Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc., 484 F.2d 1037, 1039 (3d Cir. 1973).  This exception constitutes the most obvious ground for Defendants' argument given that Ulferts did participate in Alexander's second litigation to some degree by moving to be named lead plaintiff.

But upon examination, Ulferts did not participate in or control that litigation to an extent sufficient to preclude him from relitigating those claims.  He was never actually party to Alexander's first suit.  Also, his participation in Alexander's second suit was minimal, appearing limited to filing one motion to be appointed lead plaintiff.  There is no evidence that Ulferts exercised any control or participated in any other way in that suit.  Furthermore, it is insufficient for purposes of preclusion that Ulferts may have been part of the putative class in both of Alexander's suits.  Judgments in putative class action suits do not bind non-named plaintiffs absent either certification or treatment by a court as a class action, neither of which conditions were met in Alexander's suits.  Collins, 34 F.3d

---

[4]Preclusion of nonparties usually falls under the rubric of issue preclusion, rather than claim preclusion, because the latter generally supposes that the party to be precluded is the party who has actually litigated the claim, Montana v. United States, 440 U.S. 147, 154 (1979), but even claim preclusion may sometimes apply to litigants not party to the original suit.  See Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., 750 F.2d 267, 270–72 (3d Cir. 1984).

at 179–80.  Accordingly, Alexander's suits do not preclude Ulferts from litigating his claims.

### B.    Defendants' Duty to Disclose the Shelf-Space Arrangements

Defendants argue that they are not liable under either section 10(b) or section 12(a)(2) for failing to disclose the shelf-space arrangements to Ulferts.  Defendants reason that they had no obligation to disclose those arrangements.  The Court agrees.

Both sections contain requirements that sellers of securities disclose material information.  Rule 10b-5, promulgated under section 10(b), prohibits when selling a security "to omit to state a material fact necessary in order to make . . . statements made . . . not misleading."  17 C.F.R. § 240.10b-5.  Section 12(a)(2) similarly prohibits securities sellers who use prospectuses or other communications from making statements that "omit[] to state a material fact necessary in order to make the statements . . . not misleading."  15 U.S.C. § 77l.

But the seller's obligation to disclose material information in prospectuses or other statements is not absolute.  Rather, liability under these two rules only attaches if there is a duty to disclose.  Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."); Oran v. Stafford, 226 F.3d 275, 285 (3d Cir. 2000) ("Even non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information."); see Benzon v. Morgan Stanley Distrib., Inc., 420 F.3d 598, 611–12

12

(6th Cir. 2005).

Two duties of disclosure are relevant here.  First, both rules expressly require disclosure in prospectuses or other statements of material facts necessary to clarify misleading statements already made. § 77j; § 240.10b-5.  Second, disclosure by sellers of securities in prospectuses or other statements may be required by statute or regulation. Benzon, 420 F.3d at 612 ("A duty [to disclose information] may also be imposed by statute or regulation . . . ."); In re Merrill Lynch Investment Management Funds Securities Litigation, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) ("A duty to disclose arises either (1) through an explicit regulatory or statutory requirement, or (2) when the omitted information is otherwise 'material,' or in other words, 'when disclosure is necessary to make prior statements not misleading.'" (quoting In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 268 (2d Cir. 1993))).  As the Opinion will now explain, neither duty existed here.

With respect to the necessity of disclosure to correct misleading statements, Ulferts puts forth no evidence or allegation that Defendants' disclosure of the shelf-space arrangements was necessary to clarify misleading statements already made.  Ulferts's complaint merely alleges that Defendants' prospectuses and statements failed to disclose the shelf-space arrangements.  (Compl. ¶ 16.)  It does not allege that disclosure was necessary to clarify misleading statements already made.  Nor does it reprint or summarize portions of the prospectuses or statements that would allow the Court to infer

such a necessity.   Without so much as an allegation that Defendants' prospectuses and statements contained misleading information that necessitated disclosure of the shelf-space arrangements for clarification, this Court will not find that the Defendants had such a duty of disclosure.

The Sixth Circuit has reached the same result in a similar case.  In Benzon, investors in shares of Morgan Stanley mutual funds filed a complaint against, inter alia, the funds' investment advisers and distributors, alleging that these defendants had failed to disclose material facts in the fund prospectus.  Benzon, 420 F.3d at 604.  Specifically, the investors alleged that the defendants had failed to disclose a shelf-space arrangement with brokers selling the Morgan Stanley mutual funds.  Id. at 602–04.  Like Ulferts, the investors in Benzon asserted claims under sections 10(b) and 12(a)(2).  Id.  The Sixth Circuit held that the distributors had no duty to disclose these agreements because, inter alia, the investors had failed to allege or imply that disclosure of the shelf-space arrangement was necessary to correct misleading statements.  Id. at 612 ("As just discussed, a duty to disclose information exists where it is necessary to make another statement not misleading.  Plaintiffs have identified no such statement here.").  Similarly, this Court cannot find that Defendants' disclosure of the shelf-space arrangements was necessary to correct misleading statements in their prospectuses or other statements without knowing the content of those documents.

Nor does the Court find that Defendants had a statutory or regulatory duty to

14

disclose the shelf-space arrangements.  The most natural place to find such a duty would be an SEC form known as Form N-1A.  Mutual funds must register with the SEC using this form.  17 C.F.R. § 239.15A.  Form N-1A prescribes the required contents of a funds' prospectus.  Securities and Exchange Commission, Form N-1A at 3, http://www.sec.gov/about/forms/formn-1a.pdf (last visited February 15, 2008).  But as the Sixth Circuit has recognized, "[c]urrent SEC regulations, including Form N1-A, do not impose a disclosure obligation with respect to broker compensation."  Benzon, 420 F.3d at 612.  Other courts have reached the same result.  In re AIG Advisor Group, No. 06-CV-1625, 2007 WL 1213395, at *9 (E.D.N.Y. April 25, 2007); In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig., No. 03-CV-8208, 2006 WL 1008138, at *7 (S.D.N.Y. April 18, 2006) ("The current SEC regulations impose no duty on defendants to disclose the allocation of broker compensation.").  Accordingly, the Court finds that Defendants had no statutory or regulatory duty to disclose the shelf-space arrangements.

    In summary, Defendants had no duty to disclose their shelf-space arrangements to Ulferts.  In the absence of such a duty, Defendants are not liable under section 10(b) or section 12(a)(2) for declining to make such a disclosure.  Furthermore, in the absence of some primary liability under section 10(b) or 12(a)(2), Franklin Resources cannot be held derivatively liable under section 15 of the Securities Act or section 20 of the Exchange Act.  See In re Salomon Smith Barney Mut. Funds Fees Litig., 441 F. Supp. 2d 579, 591 (S.D.N.Y. 2006).  Accordingly, the Court dismisses the complaint.

### III.    CONCLUSION

In conclusion, Ulferts's complaint fails to state a claim for which this Court may grant relief.  Furthermore, given that the entire theory of Ulferts's case rests upon a disclosure obligation that Defendants do not have, it appears to this Court that any attempt to amend the complaint would be futile.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir. 1977).  Accordingly, Ulferts's complaint is **DISMISSED WITH PREJUDICE**, and Defendants' motion is **GRANTED**.  A Order accompanies this Opinion.

s/ William J. Martini
William J. Martini, U.S.D.J.

16